IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BENDER SHIPBUILDING & REPAIR CO., INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 10-0092-CG-C |
| CATERPILLAR, INC., et al., | ) ) | |
| Defendants. | ) | |

## ORDER

This matter is before the court on the Report and Recommendation of the

Magistrate Judge (Doc. 60), plaintiff's objection thereto (Docs. 61, 62), defendant

Coverteam Inc.'s response (Doc. 70), the response of defendants Caterpillar Inc. and

Thompson Tractor Co., Inc. (Doc. 71), plaintiff's reply (Doc. 74), and plaintiff's notice

of subsequent events (Doc. 75).  Upon a de novo review of those portions of the

report and recommendation to which objection is made, the court declines to adopt

the Report and Recommendation and finds that remand is appropriate.

## I. Background

This action was removed to this court from the Circuit Court of Mobile

County, Alabama on February 24, 2010 by defendants Caterpillar Inc.

("Caterpillar") and Thompson Tractor Co., Inc. ("Thompson"). (Doc. 1).  The case

arises from a fire that occurred in the engine room of the M/V Seacor Sherman

while the vessel was under construction.  After the incident, but before this action

was commenced in state court, the plaintiff, Bender Shipbuilding & Repair Co., Inc.

1

("Bender"), was named in an involuntary Chapter 7 bankruptcy petition.  The case was later converted to a Chapter 11 proceeding, which was pending at the time these motions were filed and the Magistrate's report and recommendation was entered.  However, Bender's bankruptcy plan has since been confirmed and all property of the debtor's estate is revested in the debtor. (Doc. 75).

The Joint Notice of Removal stated that these two defendants filed the removal notice "with respect to the claims and causes of action asserted against them." (Doc. 1, p. 1).  The removal notice stated that "[t]hese claims are removable pursuant to federal bankruptcy jurisdiction, 28 U.S.C. §§ 1334 and 1452" and noted that "[t]he Court also has maritime jurisdiction pursuant to 28 U.S.C. § 1333(1). (Doc. 1, p. 1).  The notice did not state that the entire case was being removed, but only that "Caterpillar removes  … the claims and causes of action asserted against Caterpillar in the State Court Suit" and that "Thompson Tractor removes … the claims and causes of action asserted against Thompson Tractor in the State Court Suit." (Doc. 1, pp. 1-2; see also p. 9, ¶ 35).

On March 15, 2010, defendant Coverteam Inc. ("Coverteam") filed a Notice of Consent to Removal, citing Bailey v. Janssen Pharmaceutica, Inc., 536 F.3d 1202, 1207 (11th Cir. 2008) (requiring unanimous consent of all defendants for removal). (Doc. 19).  Coverteam's notice did not include any other information or explanation supporting removal of the claims against it or of the entire case to this court.

Bender moved for remand or abstention asserting that the case should be remanded based upon: (1) equitable remand  pursuant to 28 U.S.C. § 1452(b); (2)

mandatory abstention under 28 U.S.C. § 1334(c)(2); (3) permissive abstention under 28 U.S.C. § 1334(c)(1); (4) lack of subject matter jurisdiction; and (5) defect in the removal process under 28 U.S.C. §§ 1441 and 1446.  (Docs. 39, 40).

## II. The Magistrate Judge's Report & Recommendation

The Magistrate Judge stated that the sole basis for removal set forth by the notice of removal is federal bankruptcy jurisdiction pursuant to 28 U.S.C. §§ 1334 and 1452.  All parties agreed that the removal is based solely on § 1452, rather than §§ 1441 and 1446.  The Magistrate Judge acknowledged that the notice of removal filed by Caterpillar and Thompson only stated that the claims against those two defendants were being removed and that it was not necessary for the entire case to be removed. Although Coverteam did not follow proper procedure for removing the claims against it, the Magistrate Judge found that the substance of Coverteam's Notice of Consent indicated that it desired to be in federal court as well; and therefore, that the entire case should be before this court. (Doc. 60, pp. 11-12).

The Magistrate Judge then went on to find that mandatory abstention under 28 U.S.C. § 1334(c)(2) is not required because plaintiff's tort claims could have been commenced in federal court absent bankruptcy jurisdiction. (Doc. 60, p. 17).  The Magistrate Judge found that the case could have been brought in federal court pursuant to federal admiralty jurisdiction.  Although a contract for the building of a ship is considered a non-maritime activity, the Magistrate Judge found that the docking of an almost-completed vessel at the construction company's manufacturing facility on a navigable waterway is a common maritime activity and that the tort

3

claims had a sufficient maritime nexus for admiralty jurisdiction to apply. (Doc. 60, pp. 19-23).  With regard to discretionary or permissive abstention under § 1334(c)(1), the Magistrate Judge recommended that the court decline to abstain because 1) significant action had not been taken in state court; 2) all claims and defendants have been removed to this court and thus there is no risk of inconsistent rulings; 3) federal admiralty jurisdiction applies and this court is in a better position to handle potentially complex admiralty issues; 4) this court routinely handles state law contract claims; and 5) due to the bankruptcy and admiralty issues present in the case, federal jurisdiction is the most logical choice. (Doc. 60, pp. 23-26).

Lastly, the Magistrate Judge recommended that the court not remand the case under 28 U.S.C. § 1452(b) for any equitable reasons.  The Magistrate Judge restated that federal court would be better equipped to decide this case since there are no difficult state law issues and the more difficult questions in this case involve the application of admiralty principles and perhaps bankruptcy principles. (Doc. 60, pp. 26-28).

### III. Discussion

Bender objects to the following: 1) the Magistrate Judge's finding that the entire case was removed even though Coverteam's removal notice did not state a basis for federal jurisdiction; 2) the finding that admiralty jurisdiction exists over claims relating to the construction of a vessel; 3) the recommendation that this

4

court retain jurisdiction based on admiralty jurisdiction where the case was removed solely on bankruptcy removal grounds and no bankruptcy reason exists to retain jurisdiction; and  4) the recommendation that the case not be remanded for equitable reasons when no bankruptcy nexus exists.  Bender also objects to the Magistrate Judge's finding that Coverteam is the successor in interest to Alstom Power Conversion.

### A. Scope of Removal

"In removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists." Friedman v. New York Life Insurance Co., 410 F.3d 1350, 1353 (11th Cir. 2005)(internal quotes omitted).  The removal statute should be construed narrowly, with all doubts resolved against removal. Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir. 1996); see also Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 107-09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941).

In the instant case, Caterpillar and Thompson filed notices of removal which clearly contemplated removal of only the claims against them.  The Magistrate Judge found, and the undersigned agrees, that § 1452 permits the removing party to select those claims or causes of action to be removed and to leave the remainder for litigation in state court.  Bender appears to agree that the claims removed by Caterpillar and Thompson were removable under § 1452.  Accordingly, the court finds that those claims were properly removed to this court.  However, the court disagrees with the Magistrate Judge's finding that Coverteam's notice was

sufficient to remove its claims to federal court.  The notice did not state a basis for

federal jurisdiction, but merely consented to the removal by Caterpillar and

Thompson, apparently because Coverteam believed at the time that the Notice of

Removal filed by Caterpillar and Thompson removed the entire case and that

unanimous consent was necessary.  Since the Notice of Removal filed by Caterpillar

and Thompson only removed the claims against them, and since all doubts are to be

resolved against removal, the undersigned finds that Coverteam's filing was not

sufficient to remove the claims against it.  Although Coverteam's consent indicates

that Coverteam wanted to be in federal court it simply did not follow the proper

procedure for removal.  Both Bankruptcy Rule 9027 and 28 U.S.C. § 1446[1]  require

that a notice "contain a short and plain statement of the facts which entitle the

party filing the notice to remove." FED. R. BANKR. P. 9027(a); see also 28 U.S.C. §

1446(a)  (requiring that the notice of removal contain "a short and plain statement

of the grounds for removal, together with a copy of all process, pleadings, and orders

served upon such defendant or defendants in such action.").  Coverteam's consent to

removal clearly did not comply with the removal statutes.  As such, to exercise

jurisdiction would contradict the guidance of the Eleventh Circuit, which favors

---

[1] A split of authority exists as to whether Bankruptcy Rule 9027 or 28 U.S.C. § 1446
controls. See Christo v. Padgett, 223 F.3d 1324, 1331 n. 6 (11th Cir. 2000) ("Courts
have split on whether 28 U.S.C. § 1446(b) (governing removals generally) or
Bankruptcy Rule 9027 provides the appropriate time period for filing a notice of
removal in cases related to a bankruptcy proceeding.").

remand in cases where federal jurisdiction is not absolutely clear.

### B. Mandatory Abstention

Under the mandatory abstention provision, the Court must refrain from hearing the action if: "(1) the claim has no independent basis for federal jurisdiction, other than § 1334(b); (2) the claim is a non-core proceeding. That is, it is related to a case under title 11 but does not arise under or arise in a case under title 11; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court." Silliman v. GMC, No. 09-1603, 2009 WL 3063371, *1 (N.D. Ga. Sept. 22, 2009) (citations omitted).  The Magistrate Judge found that the action could have been brought in federal court pursuant to federal admiralty jurisdiction and thus, that the requisites for mandatory abstention were not met because Bender's tort claims could have been commenced in federal court absent bankruptcy jurisdiction.

> To fall under admiralty jurisdiction, the claim must satisfy the nexus test.
>
> The nexus test involves two queries: (1) Did the incident have a "potentially disruptive impact on maritime commerce"? Sisson [v. Ruby], 497 U.S. [358] at 363, 110 S.Ct. [2892] at 2896, 111 L.Ed.2d 292 [ (1990) ]; and (2) Does a "substantial relationship" exist "between the activity giving rise to the incident and traditional maritime activity"? Id. at 364, 110 S.Ct. at 2897.

Sea Vessel Inc., v Reyes, 23 F.3d 345, 350 (11th Cir. 1994).  Bender argues that the

second prong has not been met.  To determine whether a sufficient maritime

connection exists:

> We ask whether a tortfeasor's activity, commercial or non-commercial,
> on navigable waters is so closely related to activity traditionally
> subject to admiralty law that the reasons for applying special
> admiralty rules would apply in the suit at hand.

Jerome B. Grubhart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534, 115

S.Ct. 1043, 1051, 130 L.Ed.2d 1024 (1995).  It is well settled that "neither contracts

for construction nor for sale of a vessel are maritime in nature." Hatteras of

Lauderdale, Inc. v. Gemini Lady, 853 F.2d 848, 850 (11th Cir. 1988); see also

F.W.F., Inc. v. Detroit Diesel Corp., 308 Fed.App'x. 389, 391 (11th Cir. 2009) ("It is

well-established that a contract for the original construction of a vessel arises under

non-maritime, state law, while an agreement to *repair* a vessel is a federal maritime

contract."); Richard Bertram & Co. v. The Yacht, Wanda, 447 F.2d 966, 967 (5th

Cir. 1971) (noting the "prevailing rule" that "a contract for the sale of a ship is not a

maritime contract"). "Until a vessel is completed and launched it does not become a

ship in the legal sense, and therefore admiralty jurisdiction does not exist."

Hatteras, 853 F.2d at 849-850.  However, the claims at issue in the instant case are

tort claims, rather than contract claims and the vessel, although still under

construction, was docked and afloat upon the navigable waters of the United States

at the time of the fire.

Defendants argue that under Bunge Corp. v. Freeport Marine Repair, Inc.,

8

240 F.3d 919 (11ᵗʰ Cir. 2001), the vessel does not have to be completed for maritime

jurisdiction to apply to a tort claim occurring in connection with the vessel.  In

Bunge Corp, a casino vessel, under construction and moored in a waterway, broke

free and caused damage to the plaintiff's grain loading facility.  The Eleventh

Circuit found that admiralty jurisdiction applied, reasoning as follows:

> Although a pre-nexus case, the Supreme Court in Tucker v.
> Alexandroff, 183 U.S. 424, 438-39, 22 S.Ct. 195, 46 L.Ed. 264 (1901),
> addressed whether a vessel under construction may be subject to
> admiralty jurisdiction. In essence, the Court held that a vessel in its
> stocks could not be made liable in admiralty, either in rem or in
> personam. The Court did state, however, that "[i]n the baptism of
> launching she receives her name, and from the moment her keel
> touches the water she is transformed, and becomes a subject of
> admiralty jurisdiction." Id. at 438, 22 S.Ct. 195. Like the vessel in
> Tucker, Hull No. 40 was launched and floating in a navigable water
> way. Moreover, in Bender Shipbuilding & Repair Co., Inc. v. Brasileiro,
> this court held that a partially constructed drydock that broke its
> moorings during a sudden storm and collided with a vessel was subject
> to maritime jurisdiction. Bender, 874 F.2d 1551, 1555-56 (11th
> Cir.1989). While a drydock is generally not considered a vessel, "the
> drydock arguably became a 'vessel' when it entered the navigable
> waters of the Mobile River." Id. at 1555. The Bender court determined
> that jurisdiction properly vested through the tort branch of admiralty.
> Such is the case here. Since the allision occurred in navigable waters
> due to the imperfect mooring of a nearly complete vessel, the incident
> bore a substantial relationship to traditional maritime activity and
> was properly within admiralty jurisdiction.

Bunge Corp, 240 F.3d at 924 (footnotes omitted).  In the instant case, the Seacor

Sherman, like the vessel in Bunge Corp., had not been in use on navigable waters

prior to the incident and, although mostly complete, it was still under construction.

However, the Seacor Sherman did not break free and cause damage by floating

along the waterway.  The fire occurred on the Seacor Sherman while it was still

9

docked.  It never became detached from the dock and did not move out across navigable waters.  As such, the <u>Bunge Corp.</u> case does not appear to be analogous to the instant action.

In support of its argument that a maritime nexus exists, Coverteam cites <u>Kennedy Engine Co. v. Dog River Marina & Boatworks, Inc.</u>, 432 So.2d 1214 (Ala. 1983).  However, in <u>Kennedy Engine</u>, the Court found there was a significant relationship to a traditional maritime activity because the vessel in question had been in use on navigable waters prior to the fire and was being repaired at the time of the fire.  As noted above, "[i]t is well-established that a contract for the original construction of a vessel arises under non-maritime, state law, while an agreement to *repair* a vessel is a federal maritime contract." <u>F.W.F., Inc. v. Detroit Diesel Corp.</u>, 308 Fed.App'x. 389, 391 (11th Cir. 2009) (emphasis in original).  In the instant case, the Seacor Sherman had not been in use on navigable waters prior to the fire and was not being repaired, but was still under construction. Thus, <u>Kennedy Engine Co.</u> is not analogous to the instant case.

In <u>Hollister v. Luke Const. Co.</u>, 517 F.2d 920 (5th Cir. 1975) (per curiam),[2] the Former Fifth Circuit found that the plaintiff in that case had no tort claim sounding in admiralty where the barge on which plaintiff's injury allegedly occurred, although afloat, was still under construction.  517 F.2d 920, 921 (5th Cir.

---

[2] Decisions of the Former Fifth Circuit filed prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

1975).  The former Fifth Circuit found that the plaintiff could not recover under the

Jones Act, on a theory of unseaworthiness, or under general maritime law because

the barge was not a vessel in navigation at the time of the plaintiff's injury. [3]

Likewise, in Casas v. U.S. Joiner, LLC, 372 Fed.App'x. 440 (5th Cir. 2010), the Fifth

Circuit found that the alleged negligence aboard an amphibious transport dock that

was under construction was not significantly related to a traditional maritime

activity.  In Casas, a maritime situs was conceded and the plaintiff argued that the

logic in Hollister was flawed.  However, the Court disagreed, finding that Hollister

remained good precedent[4] and that the plaintiff could not sustain a maritime tort

claim.  The court finds that the Hollister and Casas cases make clear that torts

occurring aboard a ship that is afloat, but still under construction, are activities

---

[3] Defendants assert that Hollister does not apply because it is a Jones Act case.
However, the Hollister Court stated that there were unseaworthiness and general
maritime claims asserted as well and clearly found that all claims failed.

[4]  The Casas Court stated the following in support of Hollister:
 Hollister has been repeatedly relied upon by this court. See Cain v. Transocean
Offshore USA, Inc., 518 F.3d 295, 298 (5th Cir.2008) (noting the "historical tradition
that vessels under construction give rise to neither a maritime contract nor a
maritime tort"); Lowe v. Ingalls Shipbuilding, 723 F.2d 1173, 1187 (5th Cir.1984)
(rejecting admiralty jurisdiction and citing Hollister for the proposition "that an
injury to a ship construction worker on board a ship under construction and lying in
navigable waters is not a maritime tort"); see also Owens-Illinois, Inc. v. U.S. Dist.
Court for the W. Dist. of Wash., 698 F.2d 967, 970 (9th Cir.1983) (tort claims arising
from asbestos exposure during new ship construction do not bear a significant
relationship to traditional maritime activity); Keene Corp. v. U.S., 700 F.2d 836,
844 (2d Cir.1983) ( "a tort arising out of work on an uncompleted vessel has been
held to fall outside admiralty jurisdiction.").
Casas, 372 Fed.App'x. at 441.

that are not traditionally subject to admiralty law.  In the instant case, the damages
incurred did not arise from the uncompleted ship breaking away from its mooring
and traveling in open waters, but were incurred while it was still attached to the
dock.  Accordingly, the court finds that this action could not have been brought in
federal court pursuant to federal admiralty jurisdiction.  Furthermore, the court
finds that the requisites for mandatory abstention have been met and the case
should therefore be remanded.

## C. Discretionary Abstention and Equitable Remand

Even if admiralty jurisdiction applied to this case, the court finds that the
case should be remanded for discretionary and equitable reasons in light of the
above findings and because the circumstances that have changed since the
Magistrate Judge entered his Report and Recommendation.  "The equitable
considerations relevant to determine the appropriateness of equitable remand and
permissive abstention under Sections 1452(b) and 1334(c)(1), respectively, are
essentially identical, and, therefore, a court's analysis is substantially the same for
both types of relief." Vision Bank v. Platinum Investment, LLC, No. 11-00093, 2011
WL 2144547, *4 (S.D. Ala. May 11, 2011) (quoting McKee v. Lemons, 1999 U.S.
Dist. LEXIS 8735, *18 (S.D. Ala. Mar. 31, 1999)(quoting In re Donnington, 194 B.R.
750, 759 (Bankr. D.N.J. 1996)).  Specific grounds include:

> 1) Forum non-conveniens; 2) that the entire action of a bifurcated
> matter should be tried in the same court; 3) that a state court is better
> able to resolve state law questions; 4) expertise of a particular court; 5)
> judicial economy; 6) prejudice to the involuntarily removed party; 7)
> comity; and 8) the lessened possibility of an inconsistent result."

<u>Vision Bank</u>, 2011 WL 2144547 at *4-5 (quoting  <u>St. Vincent's Hospital v. Norrell</u>

<u>(In re Norrell)</u>, 198 B.R. 987, 997 (N.D. Ala. 1996)).

> In addition to the reasons discussed above, the interests of judicial
> comity and economy strongly favor remand in this case. Not
> surprisingly, state courts have long been considered the preferred
> arbiters of state law claims, and the abstention powers have been
> interpreted broadly. <u>Baggett v. First National Bank</u>, 117 F.3d 1342,
> 1353 (11th Cir.1997)("State courts, not federal courts, should be the
> final arbiters of state law.")(citing <u>Hardy v. Birmingham Bd. of Educ.</u>,
> 954 F.2d 1546, 1553 (11th Cir.1992)); <u>In re Republic Reader's Service,</u>
> <u>Inc.</u>, 81 B.R. 422, 427 (S.D. Texas 1987) ("State courts afford the best
> forum for deciding issues whose resolution turns on interpretation of
> state law; consequently I interpret the abstention powers granted by
> Congress broadly.").

<u>Vision Bank</u>, 2011 WL 2144547 at *5.

The court found above that not all of the parties and claims were removed to

this court.  Thus, the court can not dispose of this case in its entirety and there

exists a risk of inconsistent rulings in state court.  Additionally, the court has found

that federal admiralty law does not apply and thus, state law issues will determine

the resolution of this action.  While there are no difficult or novel questions of state

law that would make the state court particularly suited to decide the action, state

courts routinely hear these types of matters and are best suited to provide a quick

resolution. <u>Hatcher v. Lloyd's of London</u>, 204 B.R. 227, 233 (M.D. Ala. 1997).

Furthermore, Bender's bankruptcy plan has now been confirmed and all property of

the debtor's estate is revested in the debtor.  Thus, the resolution of this case no

longer has any impact on the administration of Bender's bankruptcy.  These factors

favor remand and the court finds that the motion to remand (Doc. 39), should be granted.

## CONCLUSION

After due and proper consideration of all portions of this file deemed relevant to the issues raised, and a <u>de novo</u> determination of those portions of the report and recommendation to which objection is made, the undersigned declines to adopt the Report and Recommendation of the Magistrate Judge.  It is **ORDERED** that the motion of Bender Shipbuilding & Repair Co., Inc., to remand (Doc. 39) is **GRANTED** and this case is hereby **REMANDED** to the Circuit Court of Mobile County, Alabama.

**DONE and ORDERED** this 16th day of April, 2012 .

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE